UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,

    Plaintiff,

v.

CITY OF HAYWARD, et al.,

    Defendants.

No. C 23-05007 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

## INTRODUCTION

In this civil rights and torts action against defendant police officers, police department, and municipality, plaintiff, who's first complaint was dismissed, moves for leave to amend. For the reasons stated below, leave is **DENIED**.

## STATEMENT

The facts underlying this action are described in full in a prior order (Dkt. No. 42). Only those facts relevant to the instant motion are recounted here.

Plaintiff, a self-described "victim of serial crime," has submitted a number of criminal complaints to the Hayward Police Department. At issue here is a complaint made to Hayward police on May 27, 2022, wherein plaintiff reported that a "foreign object had been removed from her intimate parts; that she had not consented to this penetration; that her husband was a witness to its location and removal; that an engineering lab had identified the foreign object as an electronic device/semiconductor; [and] that a PhD in electrical engineering . . . Dr. Liu had

1    identified the lab that designed and manufactured this device" (Dkt. No. 1 at 15-16).  The
2    Hayward police declined to further pursue plaintiff's complaint and issued a disposition
3    report.  Plaintiff then filed a lawsuit in state court claiming that police defendants failed to
4    investigate her complaint, harassed her while she gave her complaint on May 27, and
5    subsequently retaliated against her for making that complaint.   Defendants timely removed
6    and moved to dismiss.

7        A March 2024 tentative order concluded that the complaint warranted dismissal with
8    prejudice, but afforded both sides two weeks to file a critique of that order and show cause why
9    it should not be entered (Dkt. No. 38 at 11).  Plaintiff filed a supplemental brief that bolstered
10   her First Amendment claim with a new theory of retaliatory investigation (Dkt. No. 40 at 6-
11   7).  In light of plaintiff's new retaliatory investigation theory, an April 2024 final order
12   dismissed plaintiff's claim *without* prejudice, and invited a motion for leave to amend (Dkt.
13   No. 42 at 9) ("The allegation of concentrated surveillance is more serious and should be further
14   explained in any motion to amend that plaintiff may file.").

15       Plaintiff's proposed amendment adds a single paragraph to her complaint (Dkt. No. 44 at
16   7-8).  Therein, plaintiff alleges that defendants conducted (and may still be conducting) a
17   retaliatory investigation based on the same facts already presented in her supplemental
18   briefing.  She adds: "[p]laintiff noticed and felt threatened by increased, conspicuous police
19   presence around her house, on the road, at the gas station, at the store and as she went about
20   her day" (*id*. at 29).

21       This order follows full briefing.

## ANALYSIS

23       "Under Fed.R.Civ.P. 15(a), after twenty days from the date when the initial complaint
24   was served, a party may amend its pleading only by leave of court or by written consent of the
25   adverse party; and leave shall be freely given when justice so requires.  Although the rule
26   should be interpreted with extreme liberality, leave to amend is not to be granted
27   automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (internal
28   quotation marks and citations omitted).  Courts "consider[ ] the following five factors to assess

(Left margin: United States District Court / Northern District of California)

whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013), aff'd sub nom. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

Defendant's original complaint brought thirteen claims for relief. Her proposed amendment relates only to her First Amendment right to petition claim, and only that claim is addressed here. All others remain denied for the reasons stated in the tentative and final orders dismissing plaintiff's first complaint (Dkt. Nos. 38, 42).

Plaintiff's motion is denied because the proposed amendment to her First Amendment claim would be futile.

Plaintiff's right to petition argument, as presented in her original complaint, proceeded in two parts: (1) she was denied her right to petition, and (2) she was harassed in retaliation for her attempt to exercise her right to petition. Both the tentative and final orders dismissing plaintiff's complaint explained why plaintiff did not make out a First Amendment claim under either theory. *First*, plaintiff was allowed to exercise her right to petition on May 27: she and her husband were interviewed, her proffered expert reports were reviewed, and a disposition report issued. That is all the right to petition promises (Dkt. No. 42 at 4). *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("[Plaintiff] does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction."). *Second*, plaintiff's retaliation theory did not meet the high bar imposed on retaliation claims grounded in government speech (Dkt. No. 42 at 5-7). *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) ("[W]e have set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim."). A viable First Amendment claim against government officials' speech requires either an impact to more tangible interests or the invocation of legal sanctions or other means of coercion, persuasion, intimidation, or punishment. *Patton v. Cnty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988); *Gini v. Las Vegas Metropolitan Police Department*, 40 F.3d 1041, 1045 (9th Cir. 1994); *Nunez*

3

*v. City of Los Angeles*, 147 F.3d 867, 875-76 (9th Cir. 1998); *Mulligan*, 835 F.3d at 989, n.5. Plaintiff pled neither.

The March tentative order explained the above in detail. But plaintiff's supplemental briefing introduced a *third* theory, this time arguing that a retaliatory investigation took place, based on (1) the presence of a social worker during the taking of her complaint; (2) the use of a "disposition report" for her complaint, "which on information and belief, the CA Department of Justice collects once a case involving a suspect is resolved," (3) that officers identified her call as "call type: 415C," which, "[a]s plaintiff understands it . . . is Hayward police code for child harassment," and (4) that "[p]laintiff noted concentrated surveillance at her residence" (Dkt. No. 40 at 5-6). The April final order explained that, while the first three facts did not move the needle, "[t]he allegation of concentrated surveillance is more serious and should be further explained in any motion to amend that plaintiff may file. As it stands, however, it is not enough." (Dkt. No. 42 at 8-9).

Plaintiff's proposed amended complaint adds a single paragraph to her original complaint (Dkt. No. 44 at 7). Therein, plaintiff alleges that defendants conducted (and may still be conducting) a retaliatory investigation on the basis of the same four facts above. She adds: "[p]laintiff noticed and felt threatened by increased, conspicuous police presence around her house, on the road, at the gas station, at the store and as she went about her day" (Dkt. No. 44 at 29).

As before, that is not enough. In *White v. Lee*, cited by plaintiff, defendant HUD officials conducted an investigation of individuals who expressed views in opposition to the conversion of a motel to a multi-family housing unit for homeless persons. 227 F.3d 1214, 1220-1221 (9th Cir. 2000). Over the course of that eight-month investigation, defendants conveyed a conciliation proposal requiring the plaintiffs to cease all litigation and publications regarding the motel conversion, advised plaintiffs to accept the offer because they had violated the Fair Housing Act, directed plaintiffs, under threat of subpoena, to produce all publications, minutes, and correspondences related to the conversion project, and the names, addresses, and contact information of all people involved in the alleged discriminatory conduct. The

4

1  defendants interrogated plaintiffs, again under threat of subpoena, about their views and public
2  statements in opposition to the conversion. The defendants told a major metropolitan
3  newspaper that plaintiffs had "broken the law." Here, by contrast, plaintiff has failed to allege
4  any specific acts, only a generalized feeling that there were more police officers present in
5  public as she went about her day.

Plaintiff's reply in support of her motion for leave to amend reinforces that leave is not warranted (Dkt. No. 47). In reply, plaintiff states that leave is necessary so that she may "be allowed to proceed with discovery, as key information is in the hands of Defendants, and this information is required for her amended complaint" (*id*. at 1). Plaintiff goes on to list a number of hypotheticals that, if confirmed through discovery, would support her retaliatory investigation claim. "*If* the Hayward PD were to have contacted [plaintiff's] students or colleagues . . . this action would chill a person of ordinary firmness" (Dkt. No. 47 at 4). Similarly, "*[i]f the Hayward PD were to have* contacted members of her community," or "*[i]f [they] were to* spread their false and defamatory information to other law enforcement agencies, then this would chill an ordinary victim" (*ibid*.). She continues, "*[f]or the sake of argument, if* . . . Hayward PD utilized wireless sensor technology . . . such as that found to be implemented in Plaintiff (and to have caused Plaintiff incredible pain) as part of an investigation, that level of intrusion would threaten and intimidate a reasonable person" (*id*. at 5). Again, "*[f]or the sake of argument*, *if* the Hayward PD participated in something like constant or 24-7 surveillance of plaintiff, then this would go well beyond the bounds of normal policing and be intimidating" (*ibid*.). Finally, "*[f]or the sake of argument, if* the Hayward PD has used informants . . . to report negative, false or misleading information and to discredit Plaintiff, then any reasonable person would feel threatened and intimidated by that" (*ibid*). Plaintiff concludes that "there are numerous plausible ways in which Plaintiff *could* prove that the Hayward PD had acted in such a way as to chill" her speech, and that she "requires discovery . . . in order to answer questions at the heart of the case and to include that information in her proposed amended complaint" (*ibid*.).

Plaintiff's argument misunderstands the purpose of the present inquiry. Litigation serves to test claims adequately pled in a complaint; it is not an opportunity to go fishing for a claim by imposing costly discovery on a defendant. Plaintiff has now had three bites at the apple: her original complaint, supplemental briefing following the tentative order, and her proposed amended complaint. She has not *pled* any of the facts she highlights above. A fourth attempt would be futile.

Plaintiff's proposed amended complaint does not substantively alter the remaining dozen claims for relief presented in her complaint. Each fails to state a claim, as discussed in the (tentative and final) orders dismissing defendant's complaint.

**CONCLUSION**

For the foregoing reasons, leave is **DENIED**. Judgment shall be entered, and plaintiff will have 30 days from the entry of judgment within which to file a notice of appeal and must then timely docket her appeal at the court of appeals. Fed. R. App. P. 4(a)(1)(A).

Plaintiff may otherwise choose to abandon her federal claims and bring her state law claims (claims for relief six to thirteen) in state court. "Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice." *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996); 28 USC § 1367(c)(3). The April order dismissing plaintiff's state law claims did so without prejudice. Nothing in this order or the forthcoming judgment disturbs the declination of jurisdiction over those state law claims. They survive for the state court to decide.

**IT IS SO ORDERED.**

Dated: September 6, 2024.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE